UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

DAVID BENJAMIN NUSBAUM,

                                        Plaintiff,                      20-CV-4488 (VF)

                 -against-                                             **OPINION & ORDER**

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

                                        Defendant.

-----------------------------------------------------------------X

**VALERIE FIGUEREDO, United States Magistrate Judge**

        Plaintiff David Benjamin Nusbaum seeks judicial review of a final determination by

Defendant, the Acting Commissioner ("Commissioner") of the Social Security Administration

("SSA"),[1] denying Plaintiff's application for Child's Insurance Benefits ("CIB") and Supplemental

Security Income ("SSI") under Titles II and XVI of the Social Security Act (the "Act"),

respectively, based on a finding that he is not disabled for purposes of entitlement to such benefits.

Before the Court is Plaintiff's motion for judgment on the pleadings and the Commissioner's cross-

motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil

Procedure. For the reasons set forth below, the Commissioner's cross-motion is **GRANTED** and

Plaintiff's motion is **DENIED**.

---

[1] On July 9, 2021, Kilolo Kijakazi became Acting Commissioner of the SSA, and is
therefore substituted as named defendant. See Fed. R. Civ. P. 25(d) (permitting automatic
substitution of a party who is a public official sued in his official capacity when the public
official "ceases to hold office" while a suit is pending).

## BACKGROUND

### A. **Procedural History**

In November 2016, Plaintiff filed applications for SSI and CIB. SSA Administrative Record ("R.") at 200-06 (ECF No. 18). When Plaintiff applied for SSI and CIB, he alleged disability due to an anxiety disorder, emotional instability, obsessive compulsive disorder ("OCD"), a learning disability, attention deficit disorder ("ADD"), a speech and language impairment, and "very slow processing speed." R. at 78-79, 92-93. Plaintiff alleged that these impairments began at birth on November 9, 1989. Id. at 78-79, 92-93, 200, 206.

Plaintiff's claims for SSI and CIB were denied on January 19, 2017. Id. at 76-77. On March 19, 2017, Plaintiff requested a hearing before an administrative law judge. Id. at 117. On October 22, 2018, Plaintiff, accompanied by counsel, appeared before Administrative Law Judge Laura Michalec Olszewski (hereinafter, the "ALJ") for a hearing. Id. at 33-75. The record remained open for two weeks after the hearing for the submission of additional medical evidence. Id. at 10. Counsel for Plaintiff submitted additional evidence before the record was closed, which the ALJ accepted. Id.

On December 20, 2018, the ALJ issued her written decision, denying Plaintiff's claims for SSI and CIB benefits. Id. at 10-23. The ALJ determined that Plaintiff was not currently disabled, nor was he disabled "prior to November 8, 2011." Id. at 23. Plaintiff requested a review by the SSA Appeals Council on February 5, 2019, which was denied on April 13, 2020. Id. at 1-6, 197-98. That denial made the December 20, 2018 decision of the ALJ the final action of the Commissioner. See Lesterhuis v. Colvin, 805 F. 3d 83, 87 (2d Cir. 2015) (per curiam) ("If the Appeals Council denies review of a case, the ALJ's decision, and not the Appeals Council's, is the final agency decision.") (citation omitted).

On June 11, 2020, after exhausting his administrative remedies, Plaintiff commenced the instant action seeking judicial review of the ALJ's decision—requesting that this Court reverse the decision and grant Plaintiff "maximum monthly [CIB and/or SSI] benefits" or, in the alternative, remand the case to the Commissioner. See Complaint at 3, ECF No. 1. On December 11, 2020, the Commissioner filed the Administrative Record, which constituted her answer. ECF No. 18. Thereafter, on February 9, 2021, Plaintiff moved for judgment on the pleadings and submitted a memorandum of law in support of his motion, requesting that this Court reverse the ALJ's decision or remand the case for further proceedings. ECF Nos. 19-20. On May 13, 2021, the Commissioner submitted her cross-motion for judgment on the pleadings. ECF Nos. 23-24. Plaintiff filed a reply on June 1, 2021. ECF No. 25.

**B.** **Medical Evidence**

The parties' memoranda in support of their motions for judgment on the pleadings provide summaries of the medical evidence contained in the administrative record. See Plaintiff's Brief ("Pl.'s Br.") at 5-15 (ECF No. 20); Defendant's Brief ("Def.'s Br.") at 5-14 (ECF No. 24). Having examined the record, the Court concludes that the parties have accurately stated its contents. Although the parties focus on different aspects of the record at times, there are no inconsistencies in the parties' recounting of the medical evidence. Moreover, no party has objected to the other's summary of the medical evidence. The Court thus adopts the parties' summaries as complete for the purposes of the issues raised in this action. See Collado v. Kijakazi, No. 20-CV-11112 (JLC), 2022 WL 1960612, at *2 (S.D.N.Y. June 6, 2022) (adopting parties' summaries of medical evidence where parties did not dispute recitation of relevant facts); Scully v. Berryhill, 282 F. Supp. 3d 628, 631 (S.D.N.Y. 2017) (adopting parties' medical evidence summaries where they were "substantially consistent with each other" and neither party objected to the opposing party's summary). The medical

evidence in the record is discussed below to the extent necessary to address the issues raised in the cross-motions at hand.

## **DISCUSSION**

### A. **Legal Standards**

#### 1. Judgment on the Pleadings

A Rule 12(c) motion for judgment on the pleadings is evaluated under the same standard as a Rule 12(b)(6) motion to dismiss. Bank of N.Y. v. First Millennium, Inc., 607 F.3d 905, 922 (2d Cir. 2010). Thus, "[t]o survive a Rule 12(c) motion, the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. (internal quotation marks and citation omitted).

#### 2. Judicial Review of the Commissioner's Decision

An individual may obtain judicial review of a final decision of the Commissioner "in the district court of the United States for the judicial district in which the plaintiff resides." 42 U.S.C. § 405(g). A court reviewing a final decision by the Commissioner "is limited to determining whether the [Commissioner's] conclusions were supported by substantial evidence in the record and were based on a correct legal standard." Selian v. Astrue, 708 F.3d 409, 417 (2d Cir. 2013) (per curiam) (citations and internal quotation marks omitted); accord Greek v. Colvin, 802 F.3d 370, 374-75 (2d Cir. 2015) (per curiam); see generally 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").

Substantial evidence is "more than a mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)); accord Greek, 802 F.3d at 374-75; Burgess v. Astrue, 537 F.3d 117, 127-28 (2d Cir. 2008). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (citation and internal quotation marks omitted). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations . . . whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." Id. (citation omitted). In weighing whether substantial evidence exists to support the Commissioner's decision, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." Selian, 708 F.3d at 417 (quoting Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curium)).

The substantial evidence standard is a "very deferential standard of review." Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012). The Court "must be careful not to substitute its own judgment for that of the Commissioner, even if it might justifiably have reached a different result upon a *de novo* review." DeJesus v. Astrue, 762 F. Supp. 2d 673, 683 (S.D.N.Y. 2011) (quoting Jones v. Sullivan, 949 F.2d 57, 59 (2d Cir. 1991)) (internal quotation marks and alterations omitted). "[O]nce an ALJ finds facts, [a court] can reject those facts 'only if a reasonable factfinder would have to conclude otherwise.'" Brault, 683 F.3d at 448 (quoting Warren v. Shalala, 29 F.3d 1287, 1290 (8th Cir. 1994)) (emphasis omitted). "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010) (per curiam) (citation and internal quotation marks omitted); see also Johnson v. Astrue, 563 F. Supp. 2d 444, 454 (S.D.N.Y. 2008).

3.   Commissioner's Determination of Disability

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment

which can be expected to result in death or which has lasted or can be expected to last for a

continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); <u>see id.</u> § 1382c(a)(3)(A).

Physical or mental impairments must be "of such severity that [the claimant] is not only unable to

do his previous work but cannot, considering his age, education, and work experience, engage in

any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §

423(d)(2)(A); <u>see id.</u> § 1382c(a)(3)(B). In assessing a claimant's impairments and determining

whether they meet the statutory definition of disability, the Commissioner "must make a thorough

inquiry into the claimant's condition and must be mindful that 'the Social Security Act is a

remedial statute, to be broadly construed and liberally applied.'" <u>Mongeur</u>, 722 F.2d at 1037

(quoting <u>Gold v. Sec'y of H.E.W.</u>, 463 F.2d 38, 41 (2d Cir. 1972)). The Commissioner is required

to examine: "(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts;

(3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the

claimant's educational background, age, and work experience." <u>Id.</u> (citations omitted); <u>accord</u>

<u>Brown v. Apfel</u>, 174 F.3d 59, 62 (2d Cir. 1999) (per curiam); <u>Craig v. Comm'r of Soc. Sec.</u>, 218 F.

Supp. 3d 249, 260 (S.D.N.Y. 2016).

Five-Step Inquiry

"The Social Security Administration has outlined a 'five-step, sequential evaluation

process' to determine whether a claimant is disabled[.]" <u>Estrella v. Berryhill</u>, 925 F.3d 90, 94 (2d

Cir. 2019) (citations omitted); 20 C.F.R. § 416.920(a)(4). First, the Commissioner must determine

whether the claimant is currently engaged in any "substantial gainful activity." 20 C.F.R. §

416.920(a)(4)(i). Second, if the claimant is unemployed, the Commissioner must decide if the

claimant has a "severe medically determinable physical or mental impairment," <u>id.</u> §

416.920(a)(4)(ii), which is an impairment or combination of impairments that "significantly limits

[the claimant's] physical or mental ability to do basic work activities," <u>id.</u> § 416.920(c). Third, if

the claimant has such an impairment, the Commissioner considers whether the medical severity of

the impairment "meets or equals" a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. See id. §§

416.920(a)(4)(iii), 416.920(d). If so, the claimant is considered disabled. Id.

If the claimant alleges a mental impairment, the Commissioner must apply a "special

technique" to determine the severity of the claimant's impairment at step two, and to determine

whether the impairment satisfies Social Security regulations at step three. See 20 C.F.R §

416.920a; see also Kohler v. Astrue, 546 F.3d 260, 265 (2d Cir. 2008). "If the claimant is found to

have a 'medically determinable mental impairment,' the [Commissioner] must 'specify the

symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s),' then

'rate the degree of functional limitation resulting from the impairment(s) in accordance with

paragraph (c) of [Section 416.920a],' which specifies four broad functional areas: (1) activities of

daily living; (2) social functioning; (3) concentration, persistence or pace; and (4) episodes of

decompensation." Velasquez v. Kijakazi, No. 19-CV-9303 (DF), 2021 WL 4392986, at *18

(S.D.N.Y. Sept. 24, 2021) (quoting 20 C.F.R. §§ 416.920a(b), (c)(3)). "The functional limitations

for these first three areas are rated on a five-point scale of none, mild, moderate, marked, or

extreme, and the limitation in the fourth area (episodes of decompensation) is rated on a four-point

scaled of none, one or two, three, or four or more." Id. (internal quotations, alterations, and

citations omitted).

Fourth, if the claimant's impairment does not meet or equal a listed impairment, the

Commissioner continues to the fourth step and determines whether the claimant has the residual

functional capacity ("RFC") to perform his or her past relevant work. 20 C.F.R. §

416.920(a)(4)(iv). If the claimant is able to do such work, he or she is not disabled. Id. §

416.920(a)(4)(iv). Finally, if the claimant is unable to perform past relevant work, the

Commissioner must decide if the claimant's RFC, in addition to his or her age, education, and work

experience, permits the claimant to do other work. Id. § 416.920(a)(4)(v). If the claimant cannot

perform other work, he or she will be deemed disabled. Id. § 416.920(a)(4)(v).

The claimant has the burden at the first four steps. Burgess, 537 F.3d at 128. If the claimant

is successful, the burden shifts to the Commissioner at the fifth and final step, where the

Commissioner must establish that the claimant has the ability to perform some work in the national

economy. See Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam).

Evaluation of Medical Opinion Evidence

"Regardless of its source, the ALJ must evaluate every medical opinion in determining

whether a claimant is disabled under the [Social Security] Act." Pena ex rel. E.R. v. Astrue, No.

11-CV-1787 (KAM), 2013 WL 1210932, at *14 (E.D.N.Y. Mar. 25, 2013) (citing 20 C.F.R. §§

404.1527(d), 416.927(d)) (internal quotation marks omitted). For SSI applications filed before

March 27, 2017, such as Plaintiff's application, the SSA's regulations apply the "treating physician

rule," which requires an ALJ to give more weight to the opinions of physicians with the most

significant relationship with the claimant.[2] See 20 C.F.R. § 416.927(c)(2); see also Taylor v.

Barnhart, 117 F. App'x 139, 140 (2d Cir. 2004). Under the "treating physician" rule, in general, the

ALJ must give "more weight to medical opinions" from claimant's "treating sources" when

determining if the claimant is disabled. See 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Treating

sources, which include some professionals other than physicians, see id. §§ 404.1527(a)(2),

416.927(a)(2), "may bring a unique perspective to the medical evidence that cannot be obtained

---

[2] On January 18, 2017, the SSA published comprehensive revisions to the regulations
regarding the evaluation of medical evidence for applications filed on or after March 27, 2017. See
Revisions to the Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01,
5869-70, 2017 WL 168819 (Jan. 18, 2017). As Plaintiff's applications were filed in November
2016, the revisions do not apply here. See Conetta v. Berryhill, 365 F. Supp. 3d 383, 394 n.5
(S.D.N.Y. 2019).

from the objective medical findings alone or from reports of individual examinations, such as consultative examinations," id. §§ 404.1527(c)(2), 416.927(c)(2).

Social Security Administration regulations, as well as Second Circuit precedent, mandate specific procedures that an ALJ must follow in determining the appropriate weight to assign a treating physician's opinion. See Estrella, 925 F.3d at 95-96. At the first step, "the ALJ must decide whether the opinion is entitled to controlling weight." Id. at 95. "[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" Burgess, 537 F.3d at 128 (second alteration in original) (quoting 20 C.F.R. § 404.1527(d)(2)). "'[M]edically acceptable clinical and laboratory diagnostic techniques' include consideration of '[a] patient's report of complaints, or history, [a]s an essential diagnostic tool.'" Id. (quoting Green-Younger v. Barnhart, 335 F.3d 99, 107 (2d Cir. 2003)).

If the ALJ decides that the treating physician's opinion is not entitled to controlling weight, the ALJ "must determine how much weight, if any, to give" the opinion. Estrella, 925 F.3d at 95. In doing so, the ALJ must "explicitly consider" the so-called "Burgess factors": "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." Selian, 708 F.3d at 418 (citing Burgess, 537 F.3d at 129). An ALJ's failure to "explicitly" apply the Burgess factors when assigning weight to a medical opinion of a treating physician is a procedural error. Selian, 708 F.3d at 419-20.

The ALJ must "give good reasons" in its decision for the weight given to the treating physician's medical opinion. Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004) (per curiam) (quoting 20 C.F.R. § 404.1527(d)(2)). "Those good reasons must be supported by the evidence in

the case record, and must be sufficiently specific." LaTorres v. Comm'r of Soc. Sec. Admin., 485 F. Supp. 3d 482, 492 (S.D.N.Y. Sept. 9, 2020) (quoting Harris v. Colvin, 149 F. Supp. 3d 435, 441 (W.D.N.Y. 2016)) (internal quotation marks omitted). The ALJ's failure to provide "'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." Greek, 802 F.3d at 375 (quoting Burgess, 537 F.3d at 129-30); see also Estrella, 925 F.3d at 96. A "slavish recitation of each and every factor [listed in 20 C.F.R. § 404.1527(c)]" is unnecessary "where the ALJ's reasoning and adherence to the regulation are clear." Atwater v. Astrue, 512 F. App'x 67, 70 (2d Cir. 2013) (summary order) (citing Halloran, 362 F.3d at 31-32). Even where the ALJ fails to explicitly apply the "Burgess factors," a court may, after undertaking a "'searching review of the record,'" elect to affirm the decision if "'the substance of the treating physician rule was not traversed.'" Estrella, 925 F.3d at 96 (quoting Halloran, 362 F.3d at 32).

The Commissioner is not required to give deference to a treating physician's opinion where the treating physician "issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts." Halloran, 362 F.3d at 32 (citation omitted). In fact, "the less consistent [a treating physician's] opinion is with the record as a whole, the less weight it will be given." Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999) (citing 20 C.F.R. § 404.1527(d)(4)); see also Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.") (citation omitted).

<u>Claimant's Credibility</u>

An ALJ's credibility finding as to the claimant's disability is entitled to deference by a reviewing court. Osorio v. Barnhart, No. 04-CV-7515 (DLC), 2006 WL 1464193, at *6 (S.D.N.Y. May 30, 2006). "As with any finding of fact, '[i]f the [Commissioner's] findings are supported by substantial evidence, the court must uphold the ALJ's decision to discount a claimant's subjective complaints.'" Id. (quoting Aponte v. Sec'y of Health and Hum. Servs., 728 F.2d 588, 591 (2d Cir.

1984)) (first alteration in original). Still, an ALJ's finding of credibility "'must . . . be set forth with sufficient specificity to permit intelligible plenary review of the record.'" Pena v. Astrue, No. 07-CV-11099 (GWG), 2008 WL 5111317, at *10 (S.D.N.Y. Dec. 3, 2008) (quoting Williams v. Bowen, 859 F.2d 255, 260-61 (2d Cir. 1988)). "The ALJ must make this [credibility] determination 'in light of the objective medical evidence and other evidence regarding the true extent of the alleged symptoms.'" Id. (quoting Mimms v. Heckler, 750 F.2d 180, 186 (2d Cir. 1984)).

SSA regulations provide that statements of subjective pain and other symptoms alone cannot establish a disability. Genier, 606 F.3d at 49. The ALJ must follow a two-step framework for evaluating allegations of pain and other limitations. Id. First, the ALJ considers whether the claimant suffers from a "medically determinable impairment that could reasonably be expected to produce the symptoms alleged." Id.; see also 20 C.F.R. § 416.929(b). "If the claimant does suffer from such an impairment, at the second step, the ALJ must consider 'the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence' of record." Id. (quotation omitted); see also 20 C.F.R. § 416.929(a). Among the kinds of evidence that the ALJ must consider (in addition to objective medical evidence) are:

> 1. The individual's daily activities; 2. [t]he location, duration, frequency, and intensity of the individual's pain or other symptoms; 3. [f]actors that precipitate and aggravate the symptoms; 4. [t]he type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5. [t]reatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6. [a]ny measures other than treatment the individual uses or has used to relieve pain or other symptoms (*e.g.*, lying flat on his back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7. [a]ny other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

Pena, 2008 WL 5111317, at *11 (citing Social Security Ruling ("SSR") 96-7p, 1996 WL 374186, at *3 (SSA July 2, 1996)).

**B.  <u>The ALJ's Decision</u>**

On December 20, 2018, the ALJ issued her decision, finding after "careful consideration of all of the evidence," that Plaintiff "has not been under a disability within the meaning of the Social Security Act," as defined in Sections 223(d) and 1614(a)(3)(A), "from November 9, 1989, through the date of this decision." R. at 11, 23. The ALJ began by explaining the five-step evaluation process for determining whether an individual is disabled. <u>Id.</u> at 11-12.

The ALJ found at step one that Plaintiff had "not engaged in substantial gainful activity" since November 9, 1989, the alleged onset date of Plaintiff's disability. <u>Id.</u> at 13. At step two, the ALJ found that Plaintiff had five severe medically-determinable impairments—anxiety disorder; OCD; learning disability; ADD; and attention deficit hyperactivity disorder ("ADHD"). <u>Id.</u> The ALJ also found that Plaintiff has one non-severe impairment—gastroesophageal reflux disease ("GERD"). <u>Id.</u> At step three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)." <u>Id.</u>

In assessing Plaintiff's mental impairments, the ALJ found that the severity of those mental impairments, "considered singly and in combination, do not meet or medically equal the criteria of listings 12.06 and 12.11." <u>Id.</u> In order to reach this finding, the ALJ considered whether the four broad functional areas (known as "paragraph B" criteria) were satisfied, including: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. <u>Id.</u> at 13-14. The ALJ concluded that Plaintiff's mental impairments caused no more than a "moderate" limitation in any of the functional areas. <u>Id.</u> at 14.

Specifically, in understanding, remembering, or applying information, the ALJ found that Plaintiff has moderate limitations. Id. The ALJ noted that Plaintiff had alleged difficulty in completing tasks due to his anxiety, but that Plaintiff stated during the hearing that "he could prepare meals, go to doctor's appointments, take medications, take public transportation, read and study, and attend college classes." Id. The ALJ also noted that the record indicated that Plaintiff "was able to provide information about his health, comply with treatment outside of a doctor's office or hospital, [and] respond to questions from medical providers," and that there was no mention of any issues with Plaintiff's short- or long-term memory. Id.

The ALJ also found that Plaintiff has moderate limitations in interacting with others. Id. The ALJ noted that Plaintiff had alleged difficultly engaging in social activities and spending time in crowds. Id. However, the ALJ noted that the hearing testimony and record indicated that Plaintiff "is able to live with others, socialize with friends and family, go on vacation to amusement parks, attend college classes, . . . take public transportation," and maintain "good rapport with providers." Id. Similarly, the ALJ found that Plaintiff has moderate limitations in his ability to concentrate, persist, or maintain pace. Id. The ALJ noted that Plaintiff was able to prepare meals, watch television, read, handle his own medical care, and attend class regularly. Id. Additionally, the ALJ found that Plaintiff has moderate limitations in his ability to adapt or manage himself. Id. Although Plaintiff "asserted that he has difficulties in handling change," the ALJ noted that, at the hearing, Plaintiff also "stated that he is able to handle self-care and personal hygiene, care for his dog, and get along with caregivers." Id. The ALJ noted that the "objective evidence" in the record indicated that Plaintiff has "appropriate grooming and hygiene, no problem getting along well with providers and staff, and no problems with temper control." Id.

Prior to proceeding to step four, the ALJ found, "[a]fter careful consideration of the entire record," that Plaintiff had the RFC to "perform a full range of work at all exertional levels," with

some limitations. Id. at 15. Specifically, the ALJ found that Plaintiff can work in a "low-stress environment defined as occasional judgment, occasional decision-making, and occasional changes in work setting," that Plaintiff was "limited to simple, routine and repetitive tasks," and that Plaintiff could "have occasional interaction with supervisors, co-workers and the public." Id. The ALJ explained that in making the RFC finding, she "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," and "also considered opinion evidence" as required by 20 C.F.R. 404.1527 and 416.927. Id.

    In considering Plaintiff's symptoms, the ALJ followed the established two-step process: (1) determining whether there was an underlying medically determinable physical or mental impairment that could reasonably be expected to produce Plaintiff's pain or other symptoms; and (2) if such an impairment was shown, evaluating the "intensity, persistence, and limiting effects of [Plaintiff's] symptoms to determine the extent to which they limit" the claimant's work-related activities. Id. The ALJ analyzed Plaintiff's impairments and, after considering the medical records and other evidence, found that even though Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," his "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." Id. at 17.

    In finding that Plaintiff's statements were not entirely consistent, the ALJ began by describing Plaintiff's hearing testimony. At the hearing, Plaintiff testified that he "had issues since he was four years old," his symptoms "have been the same since childhood," he has never worked, and his mother completed all of his disability applications. Id. at 15. Plaintiff reported that he has "always been on ADD medication," and although he was not then taking anxiety medication, he "would be starting anxiety medication in the near future," after switching psychiatrists. Id. Plaintiff

testified that he had taken Klonopin for anxiety in the past and that it had been "helpful" to him. Id. Plaintiff further testified he has a college degree from Mercy College in Music Industry and Technology, he is taking pre-requisite courses for a nursing program, and he "does not experience any psychological symptoms when he is in school or studying." Id. Instead, according to Plaintiff, he has "intermittent generalized anxiety when he is not in school." Id. As for Plaintiff's activities of daily living, the ALJ noted that Plaintiff testified that he "prepares breakfast, studies for college classes, attends a 2-hour class at Westchester Community College, takes care of his dog" (which "includes walking, feeding, and going to the dog park"), "texts his friends, socializes with his friends, and watches the news." Id. at 15-16.

The ALJ also noted that although Plaintiff "has had academic difficulties due to his working memory and anxiety," the educational records reflected that Plaintiff had "excellent grades, made the honor roll, had improved social skills with his peers, and graduated high school with a Regents diploma in 2008." Id. at 16. The ALJ noted that Plaintiff was administered the WAIS-III in May 2008 and test results indicated a full-scale IQ of 88, verbal IQ of 89, and performance IQ of 85. Id. Evaluations from teachers showed that Plaintiff's reading and writing abilities had improved, although he struggled with "higher order thinking skills." Id. The ALJ noted that Plaintiff enrolled in Mercy College in the Music and Technology program, completed an internship at a recording studio, and graduated college with a 3.171 GPA—completing three to five classes per semester. Id. The ALJ explained that Plaintiff's "longstanding history of mental impairments," required that he attend special education classes and participate in a child/adolescent outpatient program in the eighth grade. Id. The ALJ further noted that Plaintiff's mental-health records indicated that Plaintiff had received ongoing treatment as an adolescent, had stopped taking medication in March 2014, and restarted medication in 2016 ahead of an internship. Id.

The ALJ further noted that in January 2017, Plaintiff began psychiatric treatment with Dr. Martin Evers, who prescribed him Focalin, Propranolol, and Seroquel. Id. at 17. At an initial evaluation in January 2017, Plaintiff had indicated that he was not taking medication, and his mother did not want him taking certain medications. Id. The ALJ noted that Plaintiff reported to Dr. Evers that he has panic attacks, difficulty sleeping, and avoids driving certain places. Id. However, Plaintiff also reported having gone on recent vacations with his best friend. Id. A mental-status examination by Dr. Evers indicated that Plaintiff was neatly dressed, appropriately groomed, appeared anxious and quiet with poor eye contact and slow speech, but had organized and goal-directed answers to questions, along with intact impulse control and fair insight. Id. Plaintiff also reported having a professional recording studio in his home, and that he had decided to go back to school for nursing or radiology. Id. at 17. Plaintiff informed Evers that he received an "A" grade in his Anatomy class, was able to study for upwards of seven-to-eight hours a day, and that he was "doing well" on Focalin. Id. Plaintiff also reported panic attacks related to applying to nursing schools. Id.

The ALJ also described Plaintiff's psychotherapy with Cynthia Schilero, a licensed clinical social worker. Id. Schilero described that Plaintiff suffers from anxiety, panic attacks, and has obsessive thoughts that he or his mother will die. Id. In one instance, Plaintiff told Schilero that he had became anxious at the movies with a friend, but successfully used coping techniques to manage his anxiety. Id. A mental-status examination indicated flat affect, poor eye contact, and lost focus. Id. However, the ALJ noted that the records indicated that Plaintiff was able to travel independently to New York City with a friend, was planning a trip to Orlando, Florida with his mother and sister, was applying to Westchester Community College, and signed up for two classes to change his field of study to "x-ray technology." Id.

With Plaintiff's hearing testimony and the evidence in the record in mind, the ALJ found that Plaintiff's statements concerning the severity and limiting effects of his symptoms were not consistent with the medical evidence and other evidence in the record. Id. at 17. In particular, the ALJ noted that Plaintiff's mental-health treatment had not been consistent, and that he was not on a "regular medication regimen for his ADD, OCD, and anxiety symptoms for prolonged periods." Id. The ALJ explained that the record indicated that after Plaintiff restarted medication for ADD symptoms in 2016, he was able to focus for seven-to-eight hours at a time. Id. But at the hearing, Plaintiff "reported that he was not taking any medication for his anxiety." Id. Next, the ALJ noted that Plaintiff, "despite his alleged psychological symptoms," could "perform a wide-range of daily activities," as evidenced by him successfully completing high school, graduating college with a Bachelor of Science degree, finishing an internship in New York City with a recording studio, taking public transportation, and navigating the city independently. Id. at 17-18.

Additionally, the ALJ noted that Plaintiff socialized with friends, including traveling to New York City, vacationing, and going to the movie theater. Id. at 18. The record also indicated that Plaintiff had been "able to travel by airplane" to a theme park in Orlando, Florida, and was able to successfully navigate the theme park with the general public, which the ALJ reasoned was "inconsistent with [Plaintiff's] alleged disability." Id. The ALJ also noted that Plaintiff takes care of his dog, including taking the dog to parks, and that there was no evidence that Plaintiff's dog was a therapy dog. Id. As such, the ALJ found that the record supported that Plaintiff could "understand, carry out, and remember simple instructions, sustain attention, follow supervision, and relate appropriately with others in settings that only require occasional interactions." Id.

The ALJ also independently evaluated each of the various medical opinions and prior administrative medical findings. The ALJ noted that "more weight is generally afforded to the opinion of a treating source," which will be given "controlling weight" if it is well-supported and

consistent with other substantial evidence in the record. Id. at 18. When a treating source is not given controlling weight, the ALJ noted that she must consider: the length of the treatment relationship, the frequency of treatment, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion, any relevant specialty of the treating source, and other relevant factors in 20 C.F.R §§ 404.1527 and 416.927.

First, the ALJ analyzed the medical opinion of Dr. Evers, Plaintiff's treating psychiatrist. Evers provided his first medical opinion on January 17, 2017. Dr. Evers reported that Plaintiff was not presently on medication, had limited understanding and memory, limited sustained concentration and persistence, limited social interaction skills, and limited adaption skills[3], rendering him unable to function in a work setting. Id. However, the ALJ noted that at the time of this opinion, Dr. Evers had only evaluated Plaintiff twice. Id. The ALJ determined that this January 2017 opinion was not afforded controlling weight because Dr. Evers "had not yet obtained a longitudinal picture of [Plaintiff's] mental ability at the time of [his] opinion." Id. The ALJ thus afforded "little weight" to this opinion. Id. The ALJ also gave Dr. Evers' opinion that Plaintiff is unable to work no weight, because "the ultimate finding of disability and the ability to work" is a determination reserved for the Commissioner. Id.

The ALJ also considered Dr. Evers' second medical opinion from March 18, 2018, in which Dr. Evers claimed that Plaintiff had limited success with medication and was unable to hold productive employment due to severe anxiety, OCD, and difficulties with attention and executive function. Id. In that opinion, Dr. Evers also stated that Plaintiff was not capable of the social demands of the workplace, including interacting with others or consistently following instructions, due to anxiety. Id. at 19. The ALJ found that although the record reflects that Plaintiff "experiences

---

[3] "Adaption skills" refer to a person's ability to "respond appropriately to changes in the work setting, be aware of hazards, travel/use public transportation, set realistic goals, [and] make plans independently." R. at 470.

psychological symptoms due to his severe mental impairments, they are not as limiting as proposed by Dr. Evers." Id. To support this conclusion, the ALJ pointed to Dr. Evers' treatment notes, which indicated that Plaintiff had "done well on medication," as Plaintiff had reported in May 2017 that he was doing well on "his current dosage of Focalin-XR, he had earned an 'A' in his Anatomy class, and his medication allowed him to focus and study for 7-8 hours at a time." Id. The ALJ also pointed to other therapy notes in the record, which reflected that Plaintiff was socializing with friends, traveling to New York City, going to the movies, managing his anxiety with coping strategies, registering and attending classes at Westchester Community College, and going to a theme park. Id. Accordingly, the ALJ did not give Dr. Evers' second opinion controlling weight, and instead gave it little weight, explaining that she found it was "not consistent or well-supported by other evidence in the record," including Plaintiff's "reported activities of daily living." Id.

The ALJ also discussed Dr. Evers' third medical opinion from November 15, 2018, in which he opined that Plaintiff was unable to meet competitive standards of: maintaining attention for two-hour segments; maintaining regular attendance and being punctual; sustaining an ordinary routine without special supervision; working in coordination with others without being unduly distressed; completing a normal workday and workweek without interruptions from psychologically-based symptoms; performing at a consistent pace without an unreasonable number and length of rest periods; dealing with normal work stress; understanding and remembering detailed instructions; dealing with stress of semi-skilled and skilled work; interacting appropriately with the general public; traveling in unfamiliar places; and using public transportation. Id.

In that opinion, Dr. Evers also opined that although Plaintiff has serious limitations, he is not precluded from remembering work-like procedures, understanding and remembering very short and simple instructions, making simple work-related decisions, asking simple questions or requesting assistance, responding appropriately to changes in a work setting, carrying out detailed

instructions, and setting realistic goals or making plans independently. Id. Dr. Evers opined that Plaintiff could satisfactorily carry out very short and simple instructions, accept instructions and respond appropriately to criticism from supervisors, get along with co-workers or peers, be aware of normal hazards and take appropriate precautions, maintain socially appropriate behavior, and adhere to basic standards of neatness and cleanliness. Id. Additionally, Dr. Evers opined that Plaintiff is precluded from all work due to his significant anxiety and would be absent from work more than four days per month. Id. Dr. Evers also noted that Plaintiff has moderate restrictions of activities of daily living, and marked difficulties in maintaining social functioning and concentration, persistence, or pace. Id. However, Dr. Evers opined that Plaintiff "could manage benefits in his own best interest." Id.

The ALJ did not afford controlling weight to Dr. Evers' third opinion, because Dr. Evers' "check-list style form" only contained conclusions regarding Plaintiff's functional limitations without any rationale for the conclusions, which the ALJ found were "internally inconsistent." Id. at 20. As the ALJ explained, Dr. Evers "checked that [Plaintiff] is limited but could satisfactorily accept instructions and respond appropriately to criticism from supervisors, get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes, and maintain socially appropriate behavior." Id. "However, Dr. Evers later checked that [Plaintiff] has marked difficulties in maintaining social functioning." Id. The ALJ also reasoned that Dr. Evers' "checked answers" were "inconsistent with the totality of the treating record," which showed that Plaintiff was "able to perform a wide-range of daily activities." Id. As the ALJ noted, Plaintiff is "able to socialize regularly with friends, travel on airplanes, go to amusement parks, go to the movies, successfully complete a college degree and continuing education classes, and concentrate for sustained periods of time." Id. As such, the ALJ gave Dr. Evers' third opinion "little weight" because it was "not consistent or well-supported by other evidence in the record." Id.

As for Plaintiff's treating therapist, licensed clinical social worker Cynthia Schilero,[4] the ALJ gave her opinion little weight. Schilero had treated Plaintiff since January 2018 for weekly therapy sessions. Id. Schilero opined that Plaintiff was unable to meet competitive standards of working in coordination with or proximity to others without being unduly distracted, asking simple questions or requesting assistance, accepting instructions and responding appropriately to criticism from supervisors, getting along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes, dealing with normal work stress, maintaining socially appropriate behavior, and interacting with the general public. Id. at 20. Schilero also opined that Plaintiff had moderate restrictions in activities of daily living, extreme difficulties in maintaining social functioning, marked difficulties in maintaining concentration, persistence, or pace, and has a complete inability to function independently outside of his home and outside of a highly supportive living arrangement. Id. However, Schilero stated in her questionnaire that "she was unable to assess" certain questions and left many questions blank relating to Plaintiff's ability to perform unskilled work. Id.

The ALJ explained that she afforded little weight to Schilero's opinion because the checklist-style form lacked any rationale for Schilero's conclusions, Schilero did not answer a large portion of the questions relating to unskilled work, and the checked answers were inconsistent with the totality of the treating record. Id. The ALJ again described Plaintiff's activities of daily living, such as socializing and taking classes. Id. The ALJ also noted that Dr. Evers' and Schilero's checklist forms were inconsistent regarding Plaintiff's social functioning. Id. Accordingly, the ALJ gave Schilero's opinion little weight because it was inconsistent and not well supported by the record. Id.

---

[4] The ALJ sometimes refers to Plaintiff's therapist as Cynthia Sebulero. See R. at 20. However, the underlying treatment records relied on by the ALJ indicate that the proper spelling of her last name is Schilero.

The ALJ also analyzed a medical opinion from Dr. Rodd Stein, who last treated Plaintiff in 2013. Id. at 21. Dr. Stein opined that Plaintiff had severe anxiety and panic attacks, and had difficulty leaving the house on his own, but that he was not taking any medication for his anxiety. Id. As such, the ALJ afforded Dr. Stein's opinion little weight because it was not supported by treating notes from Dr. Stein and was inconsistent with the totality of the medical evidence in the record and Plaintiff's activities of daily living. Id. For example, while Dr. Stein stated that Plaintiff had difficulty leaving his home, the record reflected that Plaintiff traveled on vacation, attended college classes, walked his dog, and socialized with friends. Id.

In a referral form from The University of the State of New York, from July 2015, Plaintiff was deemed to have met their "Most Significantly Disabled" criteria because he had three or more serious limitations requiring multiple rehabilitation services to reduce the impact of such limitations on employment. Id. The ALJ gave that opinion little weight. Id. The ALJ noted that the University's disability determination used a different standards than those used by the Social Security Administration to evaluate disability. Id.

The ALJ gave the opinion of Dr. Gawley, the state-agency psychological consultant, "great weight." Id. Dr. Gawley evaluated the record and rendered an opinion on January 19, 2017, without examining Plaintiff. Id. Dr. Gawley found that Plaintiff had: mild limitations in activities of daily living; moderate difficulties in maintaining social functioning; mild difficulties in concentration, persistence or pace; and moderate difficulties in adapting or management of oneself. Id. Dr. Gawley noted that Plaintiff completed an internship and was enrolled in school. Id. Dr. Gawley opined that Plaintiff could: understand, carry out, and remember simple instructions; sustain attention; follow supervision; relate appropriately with others in settings that do not require frequent contact with the public; and respond appropriately to changes in the workplace. Id.

Although the ALJ noted that "[g]enerally, the opinions of non-examining medical sources are entitled to less weight than the opinions of treating and examining sources," "it is possible in a particular case, depending on all of the facts . . . to give greater weight to the opinion of a non-examining source." Id. (citing 20 C.F.R §§ 404.1527(f), 416.927(f)). The ALJ assigned great weight to Dr. Gawley's opinion because it was supported by the "treating notes," the "level of treatment provided" to Plaintiff, and Plaintiff's "admitted activities of daily living." Id. The ALJ found that Dr. Gawley was familiar with the other evidence in the record and understood the Social Security Administration's disability program, policies, and evidentiary requirements. Id.

At step four, the ALJ found that Plaintiff had "no past relevant work." Id. at 22. At step five, the ALJ considered Plaintiff's "age, education, work experience, and residual functional capacity," and found that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." Id. Based on the vocational expert's testimony at Plaintiff's hearing and the Medical-Vocational Guidelines, the ALJ concluded that a finding of "not disabled" was appropriate because Plaintiff retained the RFC such that he was "capable of making a successful adjustment" to perform certain occupations. Id. at 23. Specifically, the ALJ cited the vocational expert's testimony that given Plaintiff's age, education, and work experience, such an individual would be able to perform "medium" and "unskilled" work as a: (1) Hand Packer (DOT 920.587-018); (2) Machine Packer (DOT 920.385-078); or (3) Machine Feeder (DOT 669.686-010).[5] Id. at 22-23. Accordingly, the ALJ concluded that Plaintiff "has not been under a disability" as defined in the Social Security Act, "from November 9, 1989, through the date of this decision." Id. (citing 20 C.F.R §§ 404.350(a)(5), 404.1520(g), 416.920(g)).

**C. Analysis**

---

[5] The ALJ also noted that she determined the vocational expert's testimony to be "consistent with the information contained in the Dictionary of Occupational Titles." R. at 23.

Plaintiff raises three objections to the ALJ's determination: (1) that substantial evidence did not support the ALJ's determination of Plaintiff's RFC; (2) that the ALJ should have given the opinions of Plaintiff's treating physicians "binding weight"; and (3) that the ALJ failed to consider the "many accommodations, special education placement, and support services" that Plaintiff required. Pl.'s Br. at 17-25. None of these claimed errors has merit.

      1.   The ALJ's RFC and Credibility Findings are Supported by Substantial Evidence.

As noted previously, an ALJ must evaluate a claimant's RFC (in addition to age, education, and work experience) to determine whether, despite the claimant's limitations, the claimant is able perform work in the national economy. A claimant's RFC is "the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); see also Morales v. Berryhill, 484 F. Supp. 3d 130, 145 (S.D.N.Y. 2020). In assessing a claimant's RFC, the ALJ is expected to consider all "medically determinable impairments" and "all of the relevant medical and other evidence," including the intensity and persistence of claimant's symptoms. 20 C.F.R. § 416.945(a)(2), (3); accord Mojica v. Comm'r of Soc. Sec., No. 13-CV-5631 (KPF), 2014 WL 6480684, at *12 (S.D.N.Y. Nov. 17, 2014). "When determining a claimant's RFC, the ALJ is required to take the claimant's reports of pain and other limitations into account . . . [but] may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." Genier, 606 F.3d at 49 (citations omitted). Although an "ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in [her] decision," the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." Matta v. Astrue, 508 F. App'x 53, 56 (2d Cir. 2013); accord Garcia v. Saul, No. 19-CV-3576 (GWG), 2020 WL 4742361 (S.D.N.Y. Aug. 17, 2020).

Furthermore, the regulations provide a two-step process for evaluating a claimant's assertions of pain: (1) "the ALJ must decide whether the claimant suffers from a medically

determinable impairment that could reasonably be expected to produce the symptoms alleged," and (2) "the ALJ must consider the extent to which the claimant's symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence of record." Snyder v. Saul, 840 F. App'x 641, 643 (2d Cir. 2021) (citation and internal quotation marks omitted).

Here, the ALJ properly followed this approach and her RFC determination is supported by substantial evidence. The ALJ determined that Plaintiff has the RFC to "perform a full range of work at all exertional levels," with the following limitations: (1) Plaintiff "can work in a low-stress environment defined as occasional judgment, occasional decision-making, and occasional changes in work setting"; (2) Plaintiff is limited to "simple, routine and repetitive tasks"; and (3) Plaintiff can have "occasional interaction with supervisors, co-workers and the public." R. at 15. The ALJ thus concluded that Plaintiff had the RFC to perform the medium, unskilled work identified by the vocational expert ("VE")—specifically, the jobs of hand packer, machine packer, and machine feeder. R. at 23. The totality of the record supports the ALJ's decision, which was made after considering Plaintiff's hearing testimony, medical records dating back to childhood, medical opinions, educational history, treatment history, and activities of daily living. R. at 15-18.

To begin, the ALJ considered and weighed Plaintiff's medical and educational records, including records dating back to his childhood. The ALJ acknowledged Plaintiff's "longstanding history of mental impairments," including a learning disability. R. at 16. The ALJ noted that Plaintiff was in special-education classes in school, that he underwent a psychiatric evaluation as an adolescent in 2004—through which he was diagnosed with ADD, OCD, and a nonspecific learning disability—and that he was on an anti-psychotic medication following a psychotic reaction to Paxil. R. at 16. However, the ALJ explained that such records also supported a finding that Plaintiff was able to perform unskilled work. R. at 16. For instance, despite Plaintiff's "academic difficulties due to his working memory and anxiety," the ALJ reasoned that Plaintiff's educational

records reflected that he received "excellent grades, made the honor roll, had improved social skills with his peers, and graduated high school with a Regents diploma." Id.; see also R. at 370.

Plaintiff's educational records support the ALJ's conclusion that Plaintiff is not as limited as he claimed. For instance, records from May 2008 reflect that Plaintiff participated consistently in social interactions and had "grown significantly regarding social skills development with peers and adults." R. at 370. Plaintiff's cognitive testing from May 2008 indicated that his cognitive results were "within the high end of the low average range." Id. Although Plaintiff had "significant difficulty in maintaining attention to his work," he was "significantly more alert in class," "work[ed] hard," and always completed his homework. Id. In June 2008, Plaintiff's educational records indicated that Plaintiff had "improved tremendously in both his reading and writing abilities over the past two years." R. at 365. Although Plaintiff needed to "develop more self-efficiency and independence" and "develop more extensive higher order thinking skills," his lead teacher indicated that he had "made great strides in the past four years" in his school's program. Id. Moreover, Plaintiff graduated from Mercy College with a Bachelor of Science degree, maintaining a 3.171 GPA. R. at 339-41. Plaintiff's educational records indicate that although Plaintiff had difficulties with anxiety and learning disabilities, he had nonetheless managed to successfully graduate from college.

Additionally, despite Plaintiff's inconsistent medication and treatment history, the evidence in the record supports the ALJ's conclusion that Plaintiff's condition improved with proper medication. R. at 17. Plaintiff testified at the hearing that he was currently taking Focalin and Seroquel for ADD, to help with "organizing [his] thoughts." R. at 54. While taking this medication, Plaintiff was able to study for his college-level radiology classes. R. at 43-44. And although Plaintiff had been prescribed new medication for anxiety (Klonopin and Wellbutrin), he had not yet started those medications at the time of the hearing. R. at 54-55. Plaintiff reported that his anxiety

could make it feel like he "can[not] do anything," R. at 59, but, at the time of the hearing, Plaintiff

was not taking any medication for his anxiety, R. at 17. And significantly, Plaintiff testified that

when he had previously taken Klonopin for his anxiety, it had helped him. R. at 56.

Additionally, Plaintiff's activities of daily living also support the ALJ's finding that

Plaintiff was capable of performing unskilled, low-contact, and low-stress work. Specifically, the

ALJ highlighted that Plaintiff completed an internship in New York City in 2016 which required

him to take public transportation and navigate the city. R. at 18, 48-49. Plaintiff also testified that

he has a driver's license, makes himself meals, attends college-level radiology classes, takes care of

his dog, and socializes with friends. R. 41-50. Further, Plaintiff's therapy records indicated that he

had traveled with his mother and sister to a theme park in Florida and had successfully used a

therapy technique at the movies to help with his anxiety. R. at 557, 560. Collectively, this evidence

supports the ALJ's determination that Plaintiff could "understand, carry out, and remember simple

instructions, sustain attention, follow supervision, and relate appropriately with others in settings

that only require occasional interactions." R. at 18.

Furthermore, the opinion of Dr. Gawley, the state-agency psychological consultant,

provided additional support for the ALJ's RFC determination. Dr. Gawley opined that Plaintiff

would be able to: understand, carry out, and remember simple instructions; sustain attention; follow

supervision; relate appropriately with others in settings that do not require frequent contact with the

public; and respond appropriately to changes in the workplace. R. at 88. Dr. Gawley's opinion is

consistent with Plaintiff's testimony and other evidence from Plaintiffs' treatment notes and

educational records that showed Plaintiff's ability to maintain concentration, interact with others,

and carry out simple tasks as needed. A non-examining state agency consultant's opinion can

constitute substantial evidence when, as here, the opinion is "consistent with the record as a

whole." Brown v. Saul, No. 18-CV-1456F, 2020 WL 6048910, at *5 (W.D.N.Y. Oct. 13, 2020)

(quoting <u>Diaz v. Colvin</u>, No. 13-CV-6641 (MAT), 2014 WL 2931583, at *6 (W.D.N.Y. June 27, 2014)); <u>accord</u> <u>Cepeda v. Comm'r of Soc. Sec.</u>, No. 19-CV-4936 (BCM), 2020 WL 6895256, at *10 (S.D.N.Y. Nov. 24, 2020); <u>Martinez v. Saul</u>, No. 19-CV-3499 (JCM), 2020 WL 2731000, at *10 (S.D.N.Y. May 26, 2020); <u>Leach ex rel. Murray v. Barnhart</u>, No. 02-CV-3561 (RWS), 2004 WL 99935, at *9 (S.D.N.Y. Jan. 22, 2004) (noting that opinions of "[s]tate agency physicians" may "constitute substantial evidence if they are consistent with the record as a whole.").

In short, the ALJ determined that Plaintiff was able to perform unskilled work, in a low-stress environment, and that his mental impairments presented only moderate limitations. R. at 13-15. Although Plaintiff claimed that his mental impairments significantly limited his ability to perform work, Plaintiff's own activities of daily living, his medical records, and his educational history provided substantial evidence for the ALJ's RFC determination. Finally, at the hearing, the VE testified that jobs exist in significant numbers in the national economy that Plaintiff could perform. R. at 66-70. The VE used the Dictionary of Occupational Titles to opine that Plaintiff could work as a hand packer, machine packer, or machine feeder—all jobs existing in significant numbers in the national economy. <u>Id.</u> The ALJ properly relied on the VE's testimony regarding this issue. <u>See</u> <u>Browne v. Comm'r of Soc. Sec.</u>, 131 F. Supp. 3d 89, 101 (S.D.N.Y. 2015) (concluding that ALJ could properly rely on VE's testimony regarding the existence of jobs in national economy which a person with the claimant's RFC could perform).

Plaintiff argues that the ALJ "deliberately misconstrued" the evidence in the record by "relying heavily on Plaintiff's testimonial evidence." <u>See</u> Pl.'s Br. at 21. But, as discussed, Plaintiff's own medical and educational records support the ALJ's determination that Plaintiff is capable of performing unskilled work in a low-stress environment. Plaintiff also argues that the ALJ failed to consider the "many accommodations, special education placement, and support services" that Plaintiff required. Pl.'s Br. at 23-25. But the record reflects that the ALJ did consider

such evidence. R. at 16. Specifically, the ALJ discussed Plaintiff's participation in a child/adolescent outpatient program and in special-education classes, and noted evaluations from Plaintiff's programs at school. R. at 16. Further, the record contained evidence of Plaintiff's improvement with accommodations, his positive response to medication, and his own activities of daily living, as well as his completion of an internship and obtaining a college degree. There thus is no basis for Plaintiff's claim that the ALJ "failed to consider the extent of Plaintiff's lifelong mental impairments." Pl.'s Br. at 25.

Nor is there merit to Plaintiff's argument that the ALJ did not consider the combined effect of all of Plaintiff's medical impairments. Pl.'s Br. at 21-22. The ALJ's decision reflects she discussed Plaintiff's impairments, considered the medical evidence supporting those impairments, and crafted an RFC that accounted for the symptoms of those impairments which were consistent with the record. The ALJ's decision thus makes clear that she considered the combination of impairments and the combined effect of all symptoms in making her determination. See 42 U.S.C. § 423(d)(2)(B) (requiring consideration of "combined effect of all the individual's impairments"); accord 20 C.F.R. § 404.1523. Although Plaintiff may disagree with the ALJ's findings, the ALJ's RFC determination was supported by substantial evidence, including Plaintiff's self-reported activities of daily living, as well as evidence from Plaintiff's treatment and educational records. Even if other evidence in the record may have supported Plaintiff's statements that he suffered from more severe limitations, it "is well within the ALJ's discretion to compare contradictory statements of daily activities." Hayes v. Berryhill, No. 16-CV-5259 (KBF), 2017 WL 4326118, at *10 (S.D.N.Y. Sept. 28, 2017). To the extent that Plaintiff would have weighed the evidence differently, a disagreement with the weight of the evidence is not a basis for reversal or remand. See Genier, 606 F.3d at 49 ("ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence.") (internal quotation marks and citation omitted).

2.   <u>The ALJ Properly Weighed the Medical Opinion Evidence.</u>

Under the "treating physician" rule, the ALJ must generally give "more weight to medical opinions" from a claimant's "treating source"—as defined in the regulations—when determining whether the claimant is disabled. <u>See</u> 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); <u>accord</u> <u>Morales</u>, 484 F. Supp. 3d at 142. However, if there are genuine conflicts in the medical evidence, the Commissioner may resolve them and find that the treating physician's opinion is not entitled to controlling weight. <u>Monroe v. Comm'r of Soc. Sec.</u>, 676 F. App'x. 5, 7 (2d Cir. 2017) (summary order) (citing <u>Veino</u>, 312 F.3d at 588). Stated differently, the opinion of the treating physician is not entitled to controlling weight where the opinion is "not consistent with other substantial evidence in the record" or the opinion is not well-supported. <u>Halloran</u>, 362 F.3d at 32; <u>see also</u> <u>Ratliff v. Barnhart</u>, 92 F. App'x 838, 840 (2d Cir. 2004). "When controlling weight is not given to a treating physician's assessment, the ALJ must consider the following factors to determine the weight to give the opinion: (1) the length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the evidence in support of the opinion; (4) the opinion's consistency with the record as a whole; (5) whether the opinion is that of a specialist; and (6) any other relevant factors." <u>Monroe</u>, 676 F. App'x. at 7 (citing 20 C.F.R. § 404.1527(c)). The ALJ must comprehensively set forth her reasons for the weight assigned to a treating physician's opinion. <u>Id.</u> (citation omitted).

Here, the ALJ properly weighed the opinion evidence based on the underlying factual support and consistency with the record as a whole. The ALJ gave the opinions of Plaintiff's treating psychiatrist (Dr. Evers) and treating therapist (Schilero) little weight. However, the ALJ's consideration of those opinions comports with the treating physician rule and the ALJ gave good reasons for her decision to attribute little weight to Plaintiff's treating physicians.

The ALJ considered the three medical opinions from Dr. Evers. In his first opinion from January 17, 2017, Dr. Evers reported that Plaintiff was not presently on medication, had limited understanding and memory, limited sustained concentration and persistence, limited social interaction skills, and limited adaption skills, and opined that Plaintiff was unable to function in a work setting. R. at 468-470. The ALJ was not required to give Dr. Evers's opinion that Plaintiff was unable to work any weight, because the ultimate finding of disability is a determination reserved exclusively for the Commissioner. See 20 C.F.R. § 404.1527(d)(1); see also Snell, 177 F.3d at 133 ("A treating physician's statement that the claimant is disabled cannot itself be determinative.").

Moreover, the ALJ sufficiently set forth the reasons why she did not give controlling weight to the rest of Dr. Evers' opinion from January 2017. Namely, Dr. Evers had only evaluated Plaintiff twice at the time of this opinion and Plaintiff had not yet "started his current medication regimen." R. at 18. The ALJ properly found that, at the time of this opinion, Dr. Evers had not yet obtained a longitudinal picture of Plaintiff's mental ability. See Schlichting v. Astrue, 11 F. Supp. 3d 190, 203 (N.D.N.Y. 2012) (reasoning that ALJ properly applied treating physician rule in rejecting opinion of physician, in part, where "treating relationship was limited to" six visits across two years.)

The ALJ also properly gave Dr. Evers second opinion from March 18, 2018, little weight. In this opinion, Dr. Evers opined that Plaintiff had limited success with medication and was unable to hold productive employment due to severe anxiety, OCD, and difficulties with attention and executive function. R. at 485-87. Dr. Evers also stated that Plaintiff was not capable of the social demands of the workplace, including interacting with others, due to anxiety. Id. at 485. However, the ALJ properly found that Plaintiff's symptoms were "not as limiting as proposed by Dr. Evers." Id. at 19. To support that conclusion, the ALJ relied on Dr. Evers' own treatment notes, which reflected that Plaintiff was "doing well" on medication, including his current dosage of Focalin,

that he received an "A" in his Anatomy class, and that his medication allowed him to focus and study for seven-to-eight hours at a time. R. at 19, 487; see also Mayor v. Colvin, No. 15-CV-0344 (AJP), 2015 WL 9166119, at *17 (S.D.N.Y. Dec. 17, 2015) (ALJ properly gave little weight to treating physician's opinion where physician's own notes conflicted). Additionally, then-recent treatment notes and Plaintiff's own testimony conflicted with Dr. Evers' second opinion from March 2018. As the ALJ explained, the record reflected that Plaintiff socialized with friends, traveled, went to the movies, managed his anxiety with coping strategies, attended classes at Westchester Community College, and went to a theme park in Florida. R. at 19, 43-44, 46, 557, 560. The ALJ thus adequately explained that Dr. Evers' second opinion did not warrant controlling weight, because it was inconsistent with the record as a whole.

The ALJ also properly gave Dr. Evers' third medical opinion, from a November 2018 questionnaire, little weight. R. at 20. Dr. Evers' third opinion was a "check-list style form" which only listed conclusions regarding Plaintiff's functional limitations without any rationale or further explanation for those conclusions. Id. Dr. Evers' lack of explanation or support for his conclusions is a good reason for the ALJ's decision to give the opinion little weight. See, e.g., Jorge v. Comm'r of Soc. Sec., No. 18-CV-10040 (SN), 2020 WL 1233892, at *6 (S.D.N.Y. Mar. 13, 2020) (finding ALJ acted within his discretion in concluding that physician's opinion was not well-supported where "answers [were] provided in form check boxes").

Moreover, Dr. Evers' third opinion was "inconsistent" with the record as a whole and not "well-supported," as the ALJ determined. R. at 20. For example, Dr. Evers opined that Plaintiff has marked difficulties in maintaining social functioning. R. at 575. But the record showed that Plaintiff was able to "socialize regularly with friends, travel on airplanes, go to amusement parks, go to the movies, successfully complete a college degree and continuing education classes, and concentrate for sustained periods of time." R. at 20. The ALJ thus adequately explained how Dr.

Evers' third opinion was inconsistent with the totality of the treating record and Plaintiff's activities of daily living. See R. at 20; see also R. at 43-44, 46, 56-57, 339-41, 557, 560.

Similarly, the ALJ properly gave little weight to Schilero's opinion, which was a "checklist-style form" that only included conclusions regarding Plaintiff's functional limitations without any rationale for those conclusions. R. at 20. Additionally, the ALJ noted that Schilero "did not answer a large portion of the questions regarding [Plaintiff's] ability to perform unskilled work." Id. Indeed, Schilero stated in her questionnaire that she was "not able to assess" questions regarding Plaintiff's ability to: remember, understand, and carry out instructions; maintain attention, attendance, and routine; perform at a consistent pace; make simple work-related decisions and set realistic goals; and travel or use public transportation. R. at 565-66. Schilero thus left unanswered many questions relating to Plaintiff's ability to perform unskilled work. Id. Schilero was only "able to assess how [Plaintiff's] very poor interpersonal skills may affect his work environment." Id. And in that respect, the ALJ limited Plaintiff's RFC to low-contact, low-stress, unskilled work. In short, Schilero's opinion was incomplete as it did not properly address Plaintiff's ability to perform unskilled work and focused solely on Plaintiff's interpersonal skills, which were accounted for in the ALJ's RFC determination.

Additionally, Schilero's opinion that Plaintiff had "extreme difficulties in maintaining social functioning" was, as the ALJ explained, "inconsistent with the totality of the treating record." R. at 20. As the ALJ reasoned, the record demonstrated that Plaintiff was able to socialize regularly with friends, go to the movies, travel, visit amusement parks, and complete a college degree. R. at 20; see also R. at 43-44, 46, 56-57, 339-41, 557, 560. The ALJ additionally found that Schilero's opinion was inconsistent with Dr. Evers' opinions regarding Plaintiff's social functioning. R. at 20. Dr. Evers' concluded that Plaintiff only had a "limited but satisfactory" ability to: (1) get along with co-workers or peers at work without unduly distracting them or

exhibiting behavioral extremes; and (2) accept instructions and respond appropriately to criticism from supervisors. R. at 573. By contrast, Schilero concluded that Plaintiff would be "unable to meet competitive standards" in those same skills. R. at 565. Lastly, although Schilero found that Plaintiff's short-term prognosis was "poor," she also opined that his long-term prognosis, "with the right medication," was "better." R. at 563.

The ALJ also properly gave Dr. Stein's opinion, who had last treated Plaintiff in 2013, little weight. Dr. Stein opined that Plaintiff had severe anxiety and panic attacks, including difficulty leaving the house on his own, and that his "condition was lifelong and his prognosis is guarded." R. at 438. However, Dr. Stein's opinion was inconsistent with the totality of the record, as the ALJ found. R. at 21. For example, while Dr. Stein stated that Plaintiff had difficultly leaving his house on his own, the record reflected that Plaintiff had traveled on vacation, attended college classes, walked his dog, socialized with friends, and went to the movies. R. at 43-44, 46, 557, 560. Moreover, as the ALJ notes, Dr. Stein did not submit any treating notes that would have supported his position. R. at 21.

Lastly, the ALJ properly exercised her discretion in giving "great weight" to the opinion of Dr. Gawley, the non-examining state-agency psychological consultant. R. at 21. Dr. Gawley opined that because Plaintiff was able to complete an internship and was enrolled in classes, it follows that he could understand, carry out, and remember simple instructions and sustain attention, follow supervision and relate appropriately with others in settings that do not require frequent contact with the public, and respond appropriately to changes in the workplace. R. at 88. The ALJ reasoned that Dr. Gawley's opinion was entitled to great weight because it was "supported by treating notes and the level of treatment provided to [Plaintiff], as well as his admitted activities of daily living." R. at 21. Although Dr. Gawley "did not have an opportunity" to examine Plaintiff, the ALJ reasoned that "Dr. Gawley was familiar with other evidence in the record." Id.

Under these circumstances, the ALJ did not err in giving Dr. Gawley's opinion great weight. As courts have repeatedly recognized, a non-examining physician's opinion may constitute substantial evidence to support an ALJ's findings. See Camille v. Colvin, 652 F. App'x 25, 28 (2d Cir. 2016) (summary order) (explaining that ALJ was permitted to deem the non-examining State agency consulting psychologist's opinion more reliable); see also Mongeur, 722 F.2d at 1039 (2d Cir. 1983) ("[T]he opinion of a treating physician is not binding if it is contradicted by substantial evidence, and the report of a consultative physician may constitute such evidence.") (internal citation omitted). Dr. Gawley's opinion was only one of many factors the ALJ weighed in assessing Plaintiff's RFC, and Dr. Gawley provided an explanation of the evidence reviewed and how it affected the medical opinion given. And, for the reasons already discussed, Dr. Gawley's opinion that Plaintiff had only "mild limitations in activities of daily living," "moderate difficulties" in social functioning, and "mild difficulties in concentration, persistence or pace" was well-supported and consistent with the totality of the record evidence. R. at 20.

Plaintiff argues that Dr. Gawley's opinion was rendered in January 2017, before "approximately 100 pages" of medical evidence was entered into the record, and that reliance on an opinion that is based on an incomplete record constitutes reversible error. Pl.'s Br. at 20. To be sure, the ALJ acknowledged that Dr. Gawley's opinion was based on an evaluation of the record as of January 2017. R. at 21. In January 2017, the record included Dr. Evers' first medical opinion, Dr. Stein's opinion, hospital records, and some, but not all, of Plaintiff's educational records. See R. at 93-96. The additional records submitted after Dr. Gawley's opinion included: the second and third medical opinions from Dr. Evers, along with treatment records from Dr. Evers; Schilero's opinion and treatment records; and additional educational records from the Chappaqua school

district.[6] As discussed above, Dr. Evers' second and third medical opinions, and Schilero's opinion, were inconsistent with the record and afforded little weight by the ALJ. Further, the additional educational records from the Chappaqua school district were from 1997 and the information contained in those records was consistent with information gleaned from Plaintiff's educational records, that were before Dr. Gawley, for subsequent school years. Compare R. at 502-504 with R. at 214-239, 309-391, 394-434.

Plaintiff argues that the ALJ's decision demonstrated her "willingness to play doctor instead of crediting Plaintiff's treating sources." Pl.'s Br. at 18. However, the ALJ's decision demonstrates that she appropriately evaluated the totality of the evidence in the record, including Plaintiff's hearing testimony, educational records, medical records, and medical opinion evidence. When an ALJ rejects "the treating physician's assessment because it did not accord with his treatment notes" or "other clinical findings in the record," that does not imply that the "ALJ misunderstood the physicians' opinions or substituted the assessment of lay witnesses for competent medical testimony." Williams v. Colvin, No. 15-CV-07526 (ER) (SN), 2016 WL 11272141, at *7 (S.D.N.Y. July 26, 2016), report and recommendation adopted, 2017 WL 1483545 (S.D.N.Y. Apr. 25, 2017).

---

[6] Plaintiff does not point to the specific educational records that he states were included in the "approximately 100 pages" of additional evidence admitted after Dr. Gawley's opinion. See Pl.'s Br. at 20. From a comparison of the list of exhibits in the Administrative Record (R. at "Court Transcript Index") with the evidence cited by Dr. Gawley in his opinion (see R. at 93-96), it is not apparent what specific educational records were submitted after Dr. Gawley rendered his opinion. At least some educational records from the Chappaqua school district, the Lakeland school district (Dr. Mack Bartels), and from the New York Education Department, were in the record at the time of Dr. Gawley's opinion. See R. at 93-95. But there are multiple exhibits in the Administrative Record from the Lakeland and Chappaqua school districts (see Exs. 1E, 2E, 3F, 5F, 7F), and the Court is unable to determine whether these exhibits were in the record before Dr. Gawley. It would appear, however, that at least Exhibit 18F (R. at 502-504), containing records from the Chappaqua school district, was entered into the record in 2018, after Dr. Gawley's opinion.

Plaintiff further argues that the ALJ improperly gave the treating physicians' opinions little weight because she claimed the opinions were based on Plaintiff's subjective complaints, even though psychiatric reports are "naturally dependent on subjective presentations by the patient." Pl.'s Br. at 18. The ALJ's decision indicates that she considered Plaintiff's hearing testimony and Plaintiff's statements, as reflected in the treating notes of Dr. Evers and Schilero. The ALJ properly considered whether Plaintiff's subjective complaints were supported by other evidence in the record, including activities of daily living and Plaintiff's response to treatment. Moreover, "the ALJ may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." Klemons v. Kijakazi, No. 20-CV-8326 (GWG), 2022 WL 4088080, at *9 (S.D.N.Y. Sept. 7, 2022) (cleaned up). "If the Commissioner's findings are supported by substantial evidence, the court must uphold the ALJ's decision to discount a claimant's subjective complaints." Id. (cleaned up). Here, for the reasons already discussed, Plaintiff's subjective complaints were not well-supported and were inconsistent with other evidence in the record.

**<u>CONCLUSION</u>**

For the foregoing reasons, the Commissioner's cross-motion for judgment on the pleadings

is **GRANTED** and Plaintiff's motion for judgment on the pleadings is **DENIED**. The Clerk of

Court is respectfully directed to terminate the motions at ECF Nos. 19 and 23.


DATED:        February 2, 2023
              New York, New York


                              Respectfully,

                              _____
                              VALERIE FIGUEREDO
                              United States Magistrate Judge


<u>Copies to</u>:

All counsel (via ECF)